Good morning. May it please the Court, Renee Ewen appearing on behalf of TURUYA BROTHERS, LTD. Counsel, may we reserve three minutes for rebuttal? Try to keep track of your own time, Ella. I will. In this case, the tax court decision, we feel it's reversible error because TURUYA did not, in effect, cash out but merely continued its investments as a matter of law. And we ask the Court to consider a number of questions in this case. First of all, does Section 1031F4 apply here? To answer this question, I think it raises another question, and that is do the facts establish that the TURUYA transactions did not have, as one of their principal purposes, the avoidance of federal income tax? In trying to answer this question, it raises the issue of did TURUYA use its transactions to avoid the recognition of gains on anticipated sales of its relinquished properties and, in effect, cash out its investments? Or can the transactions be viewed as merely continuing TURUYA's investments? In this case, we feel that the law is clear. Where a taxpayer from the outset had no right to cash or property not of like kind, he did not cash out but merely continued his investments, and the Section 1031 nonrecognition treatment of his exchange should not be invalidated. What do we do with the related party issue here? If you take a look at the transaction, you had Century, which was a related party, right? Is it Century? No, it's – I got the wrong name. Time. Time was a related party. That's correct. To the taxpayer. That's correct. And Time had certain properties. Let's take the Ocean transaction. Okay. Time had certain properties, and when they started before this, we had the taxpayer with a piece of property. We had Time with a piece of property, and you had a buyer over here that wanted to get the property owned by the taxpayer. At the end of the transaction, using the intermediary, the taxpayer had no property. The related party had cash. Excuse me. The taxpayer had a piece of property that used to belong to the related party, and the related party had cash, and the court treated it as an economic unit and said you cashed out. Now, why wasn't that a cash out? We feel that what has to be examined and looked at is on the taxpayer's part, what was their intent from the beginning, and I think that the documents show from the beginning it was not to cash out. They had no right to cash out. It may be the intent, but the problem is the tax law talks about what exceptions are to recognition of gain and not recognition of gain, and so you're going to eliminate the consideration of the related party and its function in this transaction? Well, that's the confusing part to me of the Section 1031. You've got 1031-4, which applies in cases where there is a qualified intermediary, such as this case. You also have the interaction with 1031-F2C and that standard, and there is no guideline as to which should apply. If you're saying that the qualified intermediary should not have been used and that alone is the factor which would put the whole transaction under the rules governing 1031-F1 and thereby kicking in the F2C standard, then you're rendering or you're possibly going to render every transaction where there's a qualified intermediary subject to those rules. Well, the purpose of the qualified intermediary is to find an exchange property for the parties who are trying to make an exchange. In this case, there was no problem finding the property. They already knew in advance where the property was. It was in the related party's hands, in time's hands, and so the intermediary here was very convenient for doing the exchange. Now, if the intermediary goes out and sees X, a third party, and finds for the parties an exchange property, it's a little different than here. I'm trying to figure out what the related party situation is. It seems to me when you get a related party, the qualified intermediary really doesn't make any difference. Well, but the other... It helps in the sense that if time would have transferred directly the property, then you would look pretty awkward. So by putting in the qualified intermediary here, it seems to me that all you're talking about is whether or not the related party exception comes in. I mean, I don't know. That's just the confusing part to me in your argument. Okay. The way we look at the transaction is you don't really focus on the use of the related party because generally speaking in all of these transactions... I mean, you don't look at the use of the qualified intermediary because generally speaking in all of these transactions, there is going to be that type of qualified intermediary used for other purposes other than to take it out of a particular rule. But we feel the important part in this case is that Teruya continued its investment. They never cashed out. And if you start to look at the particulars of the transaction, you can't really find where Teruya would have particularly gained. In this case, also, the tax court seemed to have done an analysis where they went and looked specifically at the kind of potential losses or tax price paid by times. And we don't feel that that kind of analysis by the tax court should have been done. They really didn't continue to focus or the tax court didn't focus on what was the nature of the transaction, how Teruya was not benefiting in particular from the way the transaction was structured as a whole. Except indirectly as a shareholder of times. Yes. Isn't that the whole problem here? If times didn't have a net operating loss to begin with, then we're probably not here, right? Right. But, see, so are you going to look at the fact that because times had a net operating loss, they should be, Teruya now is being penalized, so to speak. Well, I mean, that's a question for the government. But, I mean, it seems to me that that was the key factor of the tax court, is to look at the tax price to all parties and that in the transaction, right? Right. I mean, what's wrong with that in terms of the general notion that we look at the economic realities of the transaction versus what happens on paper? I think one of the problems is it allows too much discretion to the commissioner then to determine, are we going to apply the rules under F2C or F4? What year are we going to require companies to be taxed in? It gives them a lot of power and discretion to make these determination on transactions without any existing guidelines. Right. Well, that's the satisfaction that the commissioner is privileged to have. But that broad authority should have some kind of guidelines as to when it should be applied or not applied, and that's the troubling aspect about this whole Section 1031, which there are no real case decisions, guidelines, or rules that have been set up. Right. Well, we don't have any regulations yet. That's granted. But here, I mean, given the absence of regulations, why couldn't the tax court look at the entire transaction? But then, again, if you're saying the tax court should look at the entire transaction, then our position is the entire transaction is one where, from the outset, Teruya did not have any right to cash. It was a continuing investment. And, therefore, you should look at, from Teruya's perspective, the transaction as a whole and find that Teruya was merely continuing its investment and, therefore, not find that Teruya had some kind of nefarious or intentional devious plan in mind with respect to tax avoidance. Let's refresh beyond. One of the concerns of Congress is basically basis abuse, which is when it adopted it. So it looked to me as though one of the transactions, forgetting the NOL, at least one of the transactions, the basis was sort of awash, I think, in the Royal Towers transaction. Right, right, the second one. Okay. In the first one, how much of a difference was there in basis shifting? I'm not sure exactly. There was a difference. I believe that Teruya's original basis was something like 93,000 and Time's basis in their property was 1.4 million. So there was at least some basis shifting in the first transaction. Right. I don't have an answer. If there are no other questions, I'll wait and see what there is for rebuttal. Thank you. Morning. May it please the Court. This is the first time this particular section has been before held court. This is the only case we are aware that discusses this special related party exception. But it's crystal clear that what the tax court held is exactly why Congress inserted this provision in 1989. Well, I'm not sure that's the case. I mean, Congress seemed to be concerned about abuse and basis shifting. I mean, there's no other. I don't see anything in the legislative history about concern about necessarily all the taxable consequences of a transaction. But here you only have one of the two transactions arguably has a basis shifting problem. The second one doesn't. Well, both of the properties that the taxpayer owned was very low basis and very high fair market value. Several of the properties that the subsidiary had, one had, but generally speaking, subsidiary had high basis, taxpayer had low basis. But the statute, the high basis, low basis was simply the reason why Congress adopted this. There is no basis rule in the statute itself. No, no. They said we don't want you to do an abusive basis swap and then cash out. Right. Presumably, people entered to 1031s in order to avoid tax. No one's going to enter one of these related. In other words, if it was better for the related party transaction to be a recognized transaction, then nobody's going to do this because the taxpayer can set it up however they want. The key here is what happened here is exactly what Congress said we do not want. That is, related parties switch swapping and then do an alike kind. And the idea behind it is that you can avoid tax now. The related party being the economic unit can avoid tax now. Go ahead. Sorry. Excuse me. I just wanted to clarify one point. You mean deferred tax gain because sooner or later you're going to have to do the gain. Yes. At the end of the day, there will be a larger tax bite for this economic unit in the future. But there is a much either smaller or no tax bite now. And, of course, 1031 is simply a deferral mechanism anyway. And Congress said we do not want you to defer further into the future if your economic unit has cashed out. And here, clearly, the economic unit has cashed out. But would your answer be the same if times didn't have a net operating loss? The answer would be exactly the same. So you think that's irrelevant. It seemed to be more relevant to the tax court. It's irrelevant because the particular tax situation of either times or the taxpayer is irrelevant to the rule of 1031-F. 1031-F says it's simply a recognition transaction. Why is the tax consequence to the non-taxpayer exchange irrelevant? I'm sorry. To the analysis of the tax consequences to the taxpayer. You mean the outside party buyer? Yeah, times. I'm talking about times. I mean, it seems to me, I know you say this would apply regardless of the net operating loss. But it seems to me that's maybe not accurate. I think if times had paid tax on it, I think we might have a different outcome. But the concern of the tax court was to emphasize that, look, times didn't pay any money because of the net operating loss. And, therefore, nobody paid any taxes. If times had paid taxes, it might have been a different outcome. Well, times also had their own related party. In other words, the loss to times was lost because of a separate related party rule under Section 267 of the code. But this provision operates, as I mentioned, irrespective of the related party's own tax situation. Can you give me an example of how you think it would be acceptable to the commissioner? How would you have restructured this transaction so that it would have passed muster? This transaction would never have passed muster. The exceptions to 1031 would be, you know, there are mentions of statute of death, involuntary conversion. In other words, events that are beyond the party's own actions. That's what the exception is designed to deal with. So basically you're saying if anybody in a related party four-way exchange uses a qualified intermediary, they're never going to get 1031 tax treatment, right? Well, you might because what 1031-F does is essentially impose a two-year holding period. So suppose one year and ten months later one of the parties gets this great deal, you know, and they said, you know, we really want to sell now or never because of the zoning. In that situation, the out provision would allow the IRS to say, you know, it's really not. You didn't try to, you know, get around 1031. This would be acceptable. That would be the type of idea I would think where the taxpayer could come in and say, Commissioner, we're not trying to abuse 1031. But this transaction would never pass muster. Nor anyone in which all of the events were planned. Right. In the same day. This is exactly, as we point out, the 2002 revenue ruling. That is exactly the facts of this particular type of transaction. So any time you have one of these four-party all done at once, it would not work. The tax court didn't seem to go that far, did it, in its analysis? I mean, you're arguing for almost a per se rule, but this just is not going to be acceptable to the commissioner unless there's some unforeseen event that occurs later. In one of these simultaneous four-party deals, I think that's absolutely right. There is, you know, real estate lawyers and tax lawyers tend to be ingenious, so maybe they can think of some way you can do this. But this type of four-way transaction, I don't see how that would pass muster. I mean, this type between related parties. Yes. I'm assuming related parties economic unit. Right. If it was not a related party, it would be a classic 1031 swap, which is done every day. And again, the abuse is where did the money end up? You mentioned the typical situation. The money ends up, you know, a typical 1031. You've got the buyer wants the property. You say, oh, fine. Fine, meet another property. And the taxpayer itself never ends up with the money. But if Toreo owns 49% of the stock at times, then it's just fine. It's just fine because they're not related parties. Again, because under tax law, they're not an economic unit. The board of directors here seem to be interlocked in these two related parties, between time and the taxpayer, right? The same board of directors were on. Oh, yes. Right. It's the same. If you look at the minutes, the minutes are signed by the same. And as we talked about here, these were kind of all prearranged. When I was looking at F2C, you don't or are disallowed to defer the gain if it, to the satisfactory secretary, that the exchange or the disposition had one of its principal purposes, the avoidance of federal tax. Well, your argument, the avoidance here is that if it failed, you would have to pay the capital gain at that point. The avoidance here is that you're deferring the capital gain. It has nothing to do with the gain or loss in the subsidiary because they paid the tax. And, in fact, in the royal transaction, they paid a big tax. So they properly, in the subsidiary corporation time, paid all the taxes as required. But it's the fact that the taxpayer deferred by using his related party the capital gain, for whatever purposes. Is that where we're focusing? Yeah. In a permissible 1031, you're going to have two taxable events, the unrelated seller, unrelated buyer. Okay. They're going to be taxable. The taxpayer is going to be non-taxable. Here, times, you know, times this transaction was taxed and the unrelated buyer, whatever that was, would have been taxed. But in this case, also, the taxpayer does not get the benefit of 1031 because they used the related party. Well, the difficulty, I think, for me is the taxpayer didn't really analyze it that way. I mean, you're both saying the NOL is irrelevant. You're saying this transaction could never fly. They're saying, look, we should only look at it from the perspective of the taxpayer. What the taxpayer is doing is saying, well, let's look at the specific transaction and look at the tax consequences. And times didn't have a taxable event because of its NOL. They looked at the economic transaction. You're saying it would never work anyway. Well, if you – I mean, I guess I'm asking you to – are you taking a position different from that of the taxpayer? Well, I don't think so. What we're saying is that this exception for C, established to the satisfaction of the secretary. I've always kind of liked that because what if the secretary is in a bad mood and says, come on, I don't want to be – so there is a little bit of law about it. But anyway, aside from that, if you look at tax avoidance, I think that you would – that would be allowed to – as I mentioned the example of what if you're two months short of the two-year period, of something like that. And the tax court did look at, well, okay, what happened to times in this situation? Yeah, they had an NOL, so the fact that they had gain, that was postponed. But they also had a loss on one of the properties that was not permitted under a different section of the code. But I think that kind of that out provision enables a court in an appropriate case to look at, okay, is there an abuse of 1031? I mean, again, if you have a situation where the secretary is in a bad mood and says, oh, no, no, no, at least it allows a court in the house to say, okay, was this an abusive situation? Well, I think we've held another context that when you use the language to the satisfaction of that, that it's not unfettered discretion. It has to be captained by rationality. That seems to be the trend you have. The people who write law review articles, they like to abuse about what does that really mean, because it's established to the satisfaction of the secretary. But if you're not going to allow these kind of transactions, why don't you publish regulations on it so the taxpayer will know what to do? Well, there are two reasons. One, there is guidance in the form of that revenue ruling 2002, I think, 83, that's cited in our brief. That is published guidance on this type of transaction. There are so many regulation projects that are on the pipeline for IRS that, you know, every time I get a situation, you know, it would be nice to have regulations, they go, okay, we'll put it on the business plan. So the reality of the executive branch is there's a 10-year backlog. You're not going to excuse the taxpayer's problem. No, but I'm pointing out that if you were to say, okay, is there any guidance for the taxpayer and public? There is. The revenue ruling is published guidance that says exactly what would happen in this situation. And so the public knows exactly what the rules are. Well, the tax court seems to condemn or attach some significance to the use of the qualified intermediary. But as a practical matter, you've got to use a QI in all these transactions, right? The QI really has no independent relevance here. You're right. Almost all 1031s use a QI. The QI is not the problem. Otherwise, you're not in the safe harbor. Right. The QI is not the problem. Unless there are other questions, I think that we've covered. Thank you, counsel. We're done. I'll just be very brief. With respect to the revenue ruling referred to, that was in 2002, which was prior to subsequent to the transactions that were involved here. They were all completed by 1995. Excuse me, there was a house report that accompanied 1031-F. That was available for research by your tax folks at the time of the transaction, wasn't it? I believe that one was. But the house report, we feel, was consistent with the way it was interpreted because we're saying from the onsite, there was no right to cash, that you can view this as a continuing investment. And therefore, if we look at this from the point of equity, there should have been no reason why TOURIA should not be allowed non-recognition treatment. In fact, the whole section 1031 was initiated from an equitable point of view to allow deferral where cash is tied up in a continuing investment and not necessarily available. I think that was the original reason why they put these rules into place. We feel that TOURIA throughout this entire transaction was very transparent about it, that they did not have at any time an intention to avoid tax, but they were doing tax planning. Your argument is, look, we're not abusing the basis. We're doing some tax planning because we have an NOL we want to use over here. And you were surprised. I can understand that. I mean, I understand the base of the structure of the transaction and why it would appear to be central. Thank you. Thank you. This will be submitted. The final case of the morning is Tiffany and Nicholas. I have a service.
judges: Reinhardt, Brunetti, Thomas